IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTONIO BOGAN, R29595, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-cv-1248-DWD |
| | ) |
| JOHN DOE 1, | ) |
| JANE DOES 1-4, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Antonio Bogan, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Shawnee and Graham Correctional Centers. (Doc. 1). Plaintiff alleges that Defendant John Doe violated his rights by sexually harassing him during a search, and Jane Does 1-4 failed to ensure he got mental health care following the incident. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se*

complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009)*.

## The Complaint

On September 30, 2024, Plaintiff's housing unit at Shawnee was subject to a shakedown by a tactical team. He alleges that during the shakedown, John Doe 1 directed him to come to the front of his cell for a strip search. (Doc. 1 at 10). While he was naked, John Doe 1 made sexual remarks, and after he was clothed John Doe 1 touched him in a sexual manner and whispered innuendos. Specifically, he claims that John Doe 1 placed him against a wall between other inmates and intentionally touched his genitals and buttocks. He alleges that John Doe's conduct amounted to intentional infliction of emotional distress and sexual harassment. (Doc. 1 at 11-12).

Later the same day Plaintiff reported the issue as a PREA (Prison Rape Elimination Act) issue at the healthcare unit. He was assured by a nurse that a mental health provider would come to speak to him, but no one came for an entire week, despite him making daily requests for care. Finally, Jane Doe 1 (a mental health worker) came to see him at his cell. She assured him he would be seen by telepsych, but he was not seen for over six months. Two to three weeks after the assault he still had not been seen, so he filed a grievance. The grievance prompted a visit by Jane Doe 2 (another mental health worker). Jane Doe 2 assured him he would be seen by telepsych, but he still was not seen for another five months. (Doc. 1 at 12).

At some point, Plaintiff transferred to Graham where on October 23, 2024, he informed Jane Doe 3 (a mental health worker) of his desire to see someone. Like others,

she indicated he would be seen, but he was not seen. Plaintiff filed an emergency grievance, which prompted a visit with Jane Doe 4 (a mental health worker), but it was still months before he was seen. (Doc. 1 at 13). Finally, Plaintiff was seen in February of 2025, at which time he received a prescription to help with his distress. The first prescription was unhelpful, but a second medication helped to alleviate his symptoms. (Doc. 1 at 13). Plaintiff seeks monetary damages.

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Claim 1:**   **Eighth Amendment claim against John Doe for the strip search in September of 2024;**
>
> **Claim 2:**   **Intentional infliction of emotional distress claim against John Doe for his conduct during the strip search;**
>
> **Claim 3:**   **Eighth Amendment deliberate indifference claim against Defendants Jane Doe 1 and Jane Doe 2 for failing to offer adequate mental health care;**
>
> **Claim 4:**   **Eighth Amendment deliberate indifference claim against Defendants Jane Doe 3 and Jane Doe 4 for failing to offer adequate mental health care.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

### Claim 1

A violation of the Eighth Amendment consists of two elements: (1) the injury must be objectively serious enough to have deprived the inmate of the minimal civilized measure of life's necessities, and (2) the prison official must have acted with deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Strip searches are generally permissible in the prison context if conducted for a legitimate penological reason. *See id.* However, a strip search will violate the Eighth Amendment if it is "totally without penological justification" or "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Id.; see also Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009) (strip searches done in view of other inmates, in a cold room, by guards who did not regularly change latex gloves, and who sometimes made demeaning comments, were sufficient to proceed to a jury trial).

Here, the strip search was conducted in the context of a tactical shakedown, so it likely had justification, but Plaintiff alleges that it was conducted in an unnecessarily harassing manner. Specifically, he claims that John Doe made lewd comments about his physique while he was naked. These assertions are sufficient to proceed at this stage.

It is also possible that John Doe's behavior constituted improper verbal harassment, in violation of the Eighth Amendment. Verbal harassment generally does not rise to the level of a constitutional violation, though some harassment may be serious enough to constitute cruel and unusual punishment. *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review); *Brand v. Oglesby*, 2021 WL 4262447 at *1 (S.D. Ill. 2021) (finding a claim insufficient where plaintiff alleged that a guard ran into his cell, verbally threatened him, and indicated he would deploy pepper spray if plaintiff moved). Some threats may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). "The test for what constitutes cruel and unusual punishment is an objective one. It is not the actual fear of the victim, but what a "reasonable victim" would fear." *Id.*

In *Dobbey*, the Seventh Circuit concluded that a guard hanging a noose in view of an inmate and glaring at the inmate did not amount to cruel and unusual punishment because the incident was promptly investigated and was not accompanied by other threatening conduct. *Dobbey*, 574 F.3d at 445-46. By contrast, the *Dobbey* Court cited to cases that included threats of violence accompanied by physical acts. Notably, in *Irving v. Dormire*, 519 F.3d 441 (8th Cir. 2008), a court found that repeated threats of harm, accompanied by offers to inmates of money and bribes to assault a fellow inmate, were sufficient to make out an Eighth Amendment cruel and unusual punishment claim. The *Irving* Court emphasized that the "repeated and credible" nature of the threats played a

factor in the determination that the threats were actionable under the Eighth Amendment. In decisions after *Beal* and *Dobbey*, courts have focused on the frequency of harassment, the likelihood that it created a risk among the prison population, and the existence of a prompt investigation into the matter. *See e.g.*, *Elkins v. Quinn*, 2022 WL 602982 at * 3-6 (S.D. Ill. Mar. 1, 2022) (finding that vulgar and inappropriate comments made by a guard to an inmate in a private setting on a single day were not sufficient to establish an Eighth Amendment claim); *Robinson v. Budde*, 2021 WL 1722857 (N.D. Ill. April 30, 2021) (granting summary judgment to the defendants where the plaintiff alleged he felt humiliated, had insomnia, and isolated himself in his cell for a couple of days as a result of harassment, but there was no evidence the plaintiff sought psychological care, he did not fear a physical attack, and there were no repeated incidents of abuse); *Jackson v. Stolworthy*, 2017 WL 4122786 at *8-9 (S.D. Ill. Sept. 18, 2017) (allowing a harassment claim beyond 1915A review that was premised on repeated harassment over a period of 30 days or more that included allegations about plaintiff's sexuality and included physical gestures).

Plaintiff alleges not only that John Doe made lewd comments, but also that John Doe pinned him against the wall between other inmates after he was clothed and touched his buttocks and genitals while muttering more sexual innuendos. This conduct may be sufficient to sustain a claim both for the strip search, and the subsequent verbal and physical conduct. Plaintiff alleges that as a result he suffered mental distress for months before he was finally able to secure mental health medications. Claim 1 is sufficient to proceed as pled.

Claim 2

In addition to the Eighth Amendment claim, Plaintiff alleges that Defendant John Doe's conduct amounted to intentional infliction of emotional distress.  To prevail on a state law claim of intentional infliction of emotional distress a plaintiff must establish three factors.  "First, the conduct involved must be truly extreme and outrageous[; s]econd, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress[; and t]hird, the conduct must in fact cause severe emotional distress." *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 Ill.Dec. 228, 798 N.E.2d 75, 80 (2003).  "Extreme and outrageous" conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Instead, the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).  The plaintiff must also prove causation. *McDade v. Stacker*, 106 Fed.Appx. 471, 476 (7th Cir. 2004).

For now, Plaintiff may proceed against John Doe 1 on the intentional infliction of emotional distress claim because the remarks and conduct during the strip search may arguably go beyond mere insults or petty oppressions, particularly in the prison setting where a guard has control over an inmate.  If Claim 1 is later dismissed, the Court may relinquish supplemental jurisdiction over Claim 2.

Claims 3 & 4

Plaintiff faults Defendants Jane Doe 1 and Jane Doe 2 for failing to ensure he received mental health care after the incident.  Neither of these individuals saw him on

the day of the incident.  Instead, they each appear to have seen him on a single occasion in the weeks immediately following the incident.  Plaintiff does not explain what he told these individuals, if he saw them more than one time, or if he attempted to contact them after the encounters he describes.  While it certainly is possible that Plaintiff could make out a claim related to the delay he experienced in accessing mental health care, he simply has not provided enough information about his encounters with the Jane Does to proceed against them.  Furthermore, he alleges Jane Does 3 & 4 worked at a different prison than John Doe 1 or Jane Does 1 and 2.  Generally, it is preferable for claims about different facilities to be pursued in separate lawsuits.  Especially like here, where Shawnee falls within the Southern District of Illinois and Graham falls within the Central District of Illinois.[1]  If Plaintiff were to attempt to re-plead claims against Jane Does 3-4, it is possible that they could be severed into a separate case and that case could be transferred to Central Illinois, which would incur another filing fee.  Alternatively, if Plaintiff wishes to pursue claims against Jane Does 3-4, he could initiate a new case in the Central District on his own.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive against Defendant John Doe (the officer who performed the strip search).  By contrast, Claims 3 and 4 are dismissed without prejudice against Defendants Jane Doe 1-

---

[1] Graham Correctional Center is located in Montgomery County, Illinois, and Montgomery County falls within the Central District of Illinois under 28 U.S.C. § 93(b).

4. The Clerk shall **TERMINATE** Jane Does 1-4.  The Clerk shall **ADD** the Warden of Shawnee in official capacity only to identify John Doe.

Plaintiff is **<u>DIRECTED to file a notice within 21 days</u>** giving the Court as much descriptive information (nicknames, hair color, height, etc.) as possible about John Doe so that the Warden can assist in identifying this person by name.  Once Plaintiff submits his notice, the Court will set a deadline for the Warden of Shawnee to respond with identifying information.

The Clerk of Court is **DIRECTED** to prepare for the Warden of Shawnee (Warden—official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: September 25, 2025            /s *David W. Dugan*
                                     _____
                                     DAVID W. DUGAN
                                     United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.